IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMERY BARRON, | : | Civil No. 1:21-CV-00564 |
| Plaintiff, | : | |
| v. | : | |
| JOHN WETZEL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Plaintiff's complaint raises claims under 42 U.S.C. § 1983 against Defendants alleging that his Eighth and Fourteenth Amendment rights were, and continue to be, violated by his ongoing restriction to solitary confinement since 2015. (Doc. 2.) Defendants filed a motion for summary judgment on all claims. (Docs. 47, 52.) While Plaintiff spent an extended period in solitary confinement, his confinement did not amount to cruel and unusual punishment, and he was afforded the required periodic reviews. Furthermore, he failed to demonstrate any actual harm resulting from the alleged deliberate indifference. Therefore, the court will grant Defendants' motion, enter judgment in favor of Defendants, and close the case.

### PROCEDURAL HISTORY

Plaintiff, an inmate currently housed at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this action by filing a

1

complaint pursuant to 42 U.S.C. § 1983 in February of 2021 in the United States District Court for the Eastern District of Pennsylvania. (Doc. 2.) The complaint names four Defendants: (1) John E. Wetzel ("Wetzel"), Secretary of Corrections; (2) K. Ransom ("Ransom"), Warden of SCI-Dallas; (3) S. Miller ("Miller"), Deputy Superintendent for Centralized Service; and (4) L. Cronauer ("Cronauer"), Deputy Superintendent for Facility Management. (Doc. 2, pp. 3–4.)[1] Plaintiff alleges that on May 15, 2015, he was placed in solitary confinement because of an assault. (*Id*., p. 8.) He alleges that the Department of Corrections' ("DOC") policy restricts disciplinary sanctions of more than 90 days for each rule violation, so he was given 90 days and then given another 90 days for refusing an order. (*Id*.)

On November 2, 2015, instead of going back into the general population, Plaintiff alleges that his status was changed to administrative custody ("AC"). He alleges that Defendant Wetzel restricted his release and banned him from ever returning to the general population in any state facility in Pennsylvania. (*Id*.) He alleges that the administration at SCI-Dallas is using COVID-19 as an excuse to deny security level 5 prisoners any out-of-cell recreation while they are housing prisoners with Covid-19 on the same range as prisoners without Covid-19. (*Id*.)

He alleges the following prison living conditions: being housed in a "smaller than average, dungeon like cell with concrete walls and floor;" no light switch;

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

improper ventilation; no temperature control; and "[r]andom music is blasted through out the range 12 hours a day, 7 days a week, 365 days a year." (*Id*.) He alleges that when the music is not playing, prisoners scream up and down the hallway. (*Id*.) He alleges that the is only offered three-to-five-minute showers per week and three-to-five-minute shaves per week. (*Id*.) He alleges he is only out of his cell thirty minutes each week. (*Id*.)

Plaintiff alleges that his physical and mental health are deteriorating rapidly and amounts to SCI-Dallas committing torture. (*Id*.) Plaintiff alleges that he informed the administration at SCI-Dallas that he was diagnosed with pulmonary/cardiac sarcoidosis and faces a "probable certain death" if infected with Covid-19, yet the prison refuses to separate inmates who test positive. (*Id*., pp. 8–9.)

As an injury, Plaintiff alleges that his mental health has been in decline, and he has sought out and completed "thousands of pages of self help work assignments from the education and psychology department." (*Id*., p. 9.) He further alleges that his physical health has declined including weight loss, body aches, vision deterioration, and a diagnosis of sarcoidosis. (*Id*., pp. 9–10.) Plaintiff is seeking $400,000.00 in punitive damages and to be freed from solitary confinement. (Doc. 2, p. 7.)

On February 11, 2021, the Eastern District of Pennsylvania transferred the case to this district. (Doc. 7.) Defendants answered the complaint on July 2, 2021. (Doc. 30.) Defendants filed a motion for summary judgment on April 15, 2022 and a brief in support on April 28, 2022. (Docs. 47, 52.) Plaintiff filed a response on December 23, 2022 following multiple extensions of the response deadline by the court. (Docs. 54, 59, 61.) Defendants replied by filing a suggestion of mootness on March 10, 2023, stating that Plaintiff had been released into the general population on March 8, 2023. (Doc. 63.) The court will now address the pending motion for summary judgment.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Forest, SCI-Coal Township, and SCI-Dallas, all of which are located within this district. *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of

the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Relevant Facts

On June 23, 2015, Plaintiff pleaded guilty to simple assault stemming from an altercation with an officer on February 13, 2014.  (Doc. 48, p. 1; Doc. 49-9, p. 2.)  On December 14, 2015, Plaintiff was found guilty of aggravated assault for an

altercation with an officer that took place on May 15, 2015. (Doc. 48, p. 2; Doc. 49-9, p. 2.) He was sentenced to a minimum of 25 months and a maximum of 25 months in state criminal court. (Doc. 49-9, p. 7.) Administratively within the DOC, Plaintiff received 90 days of disciplinary time. (Doc. 48, p. 2.) After his disciplinary time was completed, Plaintiff was put in AC status. (*Id*.) Plaintiff was placed on the DOC's Restricted Release List ("RRL"). (Doc. 49-8, p. 3.) While on AC status at SCI-Forest, Plaintiff received regular reviews of his AC status on November 23, 2015, December 3, 2015, and December 11, 2015. (Doc. 48, p. 4.) On January 20, 2016, Plaintiff was transferred to SCI-Coal Township. (*Id*.) Plaintiff then had regular reviews of his AC status on April 14, 2016, July 7, 2016, September 29, 2016, December 22, 2016, March 16, 2017, June 8, 2017, and August 31, 2017. (*Id*., p. 5.) Plaintiff was enrolled in the step-down program. (*Id*., p. 6.) At the May 31, 2018 progress report, Plaintiff had a job. (*Id*.) Following multiple misconducts, Plaintiff was removed from the step-down program and continued in AC status. (*Id*., pp. 7-8.)

In November of 2019, Plaintiff was transferred to SCI-Dallas. (*Id*., p. 8.) Plaintiff received regular 90-day reviews while at SCI-Dallas. (*Id*.) On July 8, 2021, Plaintiff was transferred to SCI-Phoenix, and he received regular 90-day reviews by the Program Review Committee ("PRC"). (*Id*.) Plaintiff was enrolled in a step-down program called the Intensive Management Unit. (*Id*., p. 9.)

7

Plaintiff graduated from this program on February 23, 2023, and was released from AC status and into the general population on March 8, 2023.  (Doc. 63.)

### B. Defendants' Motion Will Be Granted as to the Eighth Amendment Prison Condition Claim.

Defendants seek summary judgment on the Eighth Amendment cruel and unusual punishment claim based on the living conditions while Plaintiff was held in AC status.  (Doc. 52, pp. 16–20.)

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).  Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"  *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).

An Eighth Amendment conditions of confinement claim contains two requirements: an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner asserting a claim that his conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45.

At the outset, it is well settled that mere placement in AC does not violate the Eighth Amendment. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). *See also Booze v. Wetzel*, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014) ("[M]ere placement on AC, on the RRL, does not violate the Eighth Amendment"). Thus, the court cannot conclude that the mere placement of Plaintiff in AC status or on RRL itself violated the Eighth Amendment. Under DC-ADM 802, Section 3B, inmates placed in AC are provided some privileges, including personal property, non-contact visits, legal materials, access to the law library, leisure reading material, basic toiletries, exercise, and hygiene. (Doc. 49-6, pp. 18–19.)

Plaintiff's own complaint shows that he received these privileges: "I started ordering psychology books. I also sought out and completed thousands of pages of self help work assignments from the education and psychology department." (Doc.

9

2., p. 9.)  Furthermore, Defendants provided evidence that Plaintiff received the majority of the privileges made available under DC-ADM 802, Section 3B. Plaintiff was permitted one telephone call per week utilizing the inmate telephone system, permission to purchase/obtain a TV and radio in his cell, commissary, permission to purchase/obtain a tablet in his cell, access to a kiosk, obtain one additional records box in his cell, two-hour visits with up to three visitors.  (Doc. 49-7, p. 24.)  Plaintiff stated in his deposition that nearly the entire time he was in AC he had the ability to make a phone call.  (Doc. 49-11, p. 19–20.)  The evidence Plaintiff submitted also demonstrates he had access to privileges.  Plaintiff's November 2019 Program Review Committee Decision states that he received weekly phone calls and kiosk twice a week.  (Doc. 61-2, pp. 2–3.)

     Therefore, while Plaintiff repeatedly alleged that being held in solitary confinement for such an extended period amounts to cruel and unusual punishment, Docs., 2 & 61, Defendants have set forth evidence that objectively Plaintiff was not incarcerated under conditions posing a substantial risk of serious harm.  Plaintiff failed to respond and make a showing sufficient to establish this objective element essential to his case under *Farmer*.  In fact, some of the evidence he submitted supported Defendants' assertions.  Therefore, the court will grant Defendants' motion and enter judgment in favor of Defendants on the Eighth Amendment prison conditions claim.

Simultaneous with his argument that solitary confinement amounted to cruel and unusual punishment, Plaintiff also argues that he was not isolated enough to be protected from exposure to Covid-19. (Doc. 2, pp. 8–9.) The court must defer to the broad discretion granted to prison authorities in their attempt to control the spread of Covid-19 within their facility. That is, even "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). "Because it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract Covid-19, and those who recover from Covid-19." *Jones v. County of Allegheny*, No. 21-1094, 2022 WL 2806779, at *7 (W.D. Pa. Jun. 24, 2022). The court recognizes that the list of relevant considerations for authorities during the Covid-19 pandemic was extensive and will not disturb that administrative decision. Therefore, Defendants' motion will be granted in regard to any Eighth Amendment claim that was raised in relation to the Covid-19 protocols at the SCI facilities where Plaintiff was housed.

### C. Defendants' Motion Will Be Granted as to the Fourteenth Amendment Due Process Claim.

First, the court notes that the complaint raises a Fourteenth Amendment claim regarding Plaintiff being held in AC status. (Doc. 2.) Plaintiff's responsive

11

briefing raises challenges regarding the due process afforded him in the criminal proceedings and the misconduct directly following the attack on the guard that resulted in his initial 90 day stay in solitary confinement. (Doc. 61, pp. 9–10.) Because the complaint does not allege a lack of due process afforded Plaintiff in the criminal proceedings or the initial misconduct determinations, the court will not address these claims. The sole Fourteenth Amendment challenge addressed will be his placement in AC and his continued retention there.

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. In order to raise a Fourteenth Amendment due process claim, the plaintiff is required to show that there is a liberty interest at stake:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.*" *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. *See id*. at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013).

"In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the disciplinary confinement and the conditions of that

confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532, *citing Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the *Sandin* test." *Mitchell*, 318 F.3d at 532, *comparing*, *inter alia*, *Shoats*, 213 F.3d at 144 (eight years in AC, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), *with Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not implicate a liberty interest), and *Griffin*, 112 F.3d at, 706–09 (AC for a period of fifteen months with strict limits on property, visitation, and out-of-cell activities did not implicate inmate's due process rights).

Here, at the time this lawsuit was filed, Plaintiff had remained in solitary confinement for a period of over 2,000 days. (Doc. 2, p. 8.) However, Defendants presented evidence that Plaintiff has been afforded all of the process that he is due. Specifically, the parties both presented evidence of Plaintiff receiving the requisite periodic reviews by the PRC, which is all the process that is required. *See Bowen v. Ryan*, 248 Fed. Appx. 302, 304-05 (3d Cir. 2007) (finding that, even though 20 years of AC implicated a liberty interest, "the procedures provided by the Pennsylvania Department of Corrections satisfy the minimal standards for due

13

process"); *see also Delker v. McCullough*, 103 Fed. Appx. 694 (3d Cir. 2004) (holding that the DOC's periodic reviews of status provided inmate due process to which he was entitled for continuing placement in AC), *citing Shoats*, 213 F.3d at 147 (holding that periodic reviews by the PRC comport with minimum constitutional standards for due process). While Plaintiff disputes the efficacy of the PRC reviews, the evidence submitted by Plaintiff demonstrates that he often refused to attend the PRC reviews or, if present, he refused to speak. (Doc. 61-2, pp. 3–5, 7–11.) Plaintiff cannot refuse to participate in the process of review afforded to him by the DOC and then turn around and claim a lack of due process. Therefore, Defendants' motion will be granted as to the Fourteenth Amendment claim and judgment will be entered in favor of Defendants.

### D. Defendants' Motion Will Be Granted as to the Eighth Amendment Medical Indifference Claim.

Reading the complaint liberally, Plaintiff raises an Eighth Amendment medical indifference claim regarding the potential exposure to Covid-19 and his decline in physical and mental health during the period at issue. (Doc. 2.) Plaintiff's responsive pleading also raises facts about missed medical appointments. (Doc. 61, p. 36.) However, since this was not addressed in the complaint, the court will not consider the allegations of missed medical appointments.

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  In addition, this deliberate indifference must actually cause harm.  *Bistrain v. Levi*, 696 F.3d 352, 367 (3d. Cir. 2012).

In this case, Plaintiff has failed to allege in his complaint that any of the named defendants in this action had any personal involvement in his medical treatment.  "[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of [respondent] superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and

15

acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). The only actors identified in regards to the alleged facts surrounding medical treatment are the medical staff at SCI-Dallas and the SCI-Dallas administration in their decisions regarding Covid-19. (Doc. 2, pp. 8–10.) There are no medical providers named in this action. Plaintiff states that Defendants Ransom, Miller and Cronauer, who are all part of the SCI-Dallas administration, "are fully aware of the dangers of COVID-19. I reminded them of my lung disease several times and of my sincer[e] concern of this risky, deadly, enviro[n]ment and they refuse to put safety above [convivence]." (*Id.*, p. 11.) However, all of these allegations focus on the Defendants' roles as supervisors, and not as medical providers.

Furthermore, Defendants submitted evidence that Plaintiff did not think he ever contracted Covid-19. (Doc. 48, p. 9; Doc. 49-11, pp. 13–14.) Therefore, even if Plaintiff's complaint can be liberally read to have sufficiently raised a claim against Defendants in their role as supervisors, the court cannot find liability on the potential of contracting a harmful virus as there is no actual harm asserted. *See Bistrain*, 696 F.3d at 367. Therefore, Defendants' motion will be granted, and judgment will be entered in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment will be granted. Judgment will be entered in favor of Defendants. The case will be dismissed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 27, 2023